**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                  No. 97-4733

DEJUAN SOTO,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Joseph F. Anderson, Jr., District Judge.
(CR-96-15)

Submitted: June 9, 1998

Decided: June 26, 1998

Before ERVIN, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

David B. Betts, Columbia, South Carolina, for Appellant. J. Rene
Josey, United States Attorney, Marshall Prince, Assistant United
States Attorney, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Dejuan Soto pled guilty to conspiracy to possess cocaine with intent to distribute, 21 U.S.C. § 846 (1994). He appeals the 130-month sentence he received, contending that the district court clearly erred in determining that he was responsible for at least 3.5 kilograms of cocaine, see USSG § 2D1.1,* in finding that he was not a minor or minimal participant, see USSG§ 3B1.2, in finding that he obstructed justice, see USSG § 3C1.1, and in finding that he had not accepted responsibility for his offense, see USSG § 3E1.1. Soto has requested leave to file a pro se supplemental brief in which he further contests the district court's finding concerning the drug amount and argues that the district court failed to make a specific finding on the matter. We grant leave to file the supplemental brief and affirm.

At Soto's sentencing hearing, Federal Bureau of Investigation (FBI) Agent Michael Doherty testified that, after Soto and thirty-six codefedants were indicted, but while Soto remained a fugitive, the FBI was contacted by Sandra Ungarski. Her husband, codefendant John Ungarski, was in custody. Sandra Ungarski said Soto, whom she knew as Derrick Lee, had come to her house in Pennsylvania in the middle of the night asking about her husband. Afraid to tell Soto that her husband had been arrested, she said he was out of town. Soto replied that he knew differently, and that if he[Soto] were arrested, he would have some of his friends take care of her. Mrs. Ungarski understood this to be a threat. John Ungarski subsequently informed investigators that Soto had recruited him to transport cocaine from New York to various locations for Leroy Gardner, a New York cocaine dealer. Soto reportedly showed Ungarski a secret compartment in the 1985 Cadillac where the cocaine was hidden. Another conspirator, Robert Coleman, who distributed cocaine in South Carolina, told investigators that Soto coordinated the transportation of cocaine from Gardner to him and also arranged for money to be transferred to Gardner. He said that Soto provided him with names to use in wiring money to Gardner, including the name Derrick Lee. Four money orders totaling $24,000 were sent to Derrick Lee. When he

_____

*U. S. Sentencing Guidelines Manual (1995).

2

was arrested, Soto had a Social Security card in the name Derrick Lee.

Another courier, Jamie Winford, testified at sentencing that Soto accompanied him when he picked up nine packages from Gardner and another five packages from Gardner's girlfriend the same day. Each package measured about 9-1/2 inches by 2-1/2 inches by 6-1/2 inches. Winford understood that the packages contained cocaine and said he believed each package contained about one kilogram of cocaine. However, he did not weigh the packages or see the contents. Winford said Soto placed all the packages in a secret compartment in the van Winford was driving. Winford testified that his job was to deliver cocaine to customers of Gardner's in Virginia, North Carolina, and South Carolina.

Soto also testified. He said Gardner was a friend, but that he had no part in Gardner's drug dealing. He said he also knew Ungarski and had arranged for Ungarski to repair Gardner's cars on occasion and that once, as a favor, Ungarski had driven one of Gardner's cars to North Carolina to have it inspected. Soto admitted that when he gave the car keys to Ungarski he believed cocaine was hidden in the car. He denied picking up packages of cocaine with Winford or threatening Sandra Ungarski. He said the Social Security card in the name of Derrick Lee which he was carrying when he was arrested had been left at his house by his brother's friend who on occasion picked up money for Gardner.

To determine the amount of cocaine for which Soto was accountable, the district court accepted Winford's testimony that Soto helped him pick up a total of fourteen packages of cocaine. However, the court declined to find that each package contained one kilogram of cocaine, as the government argued, because Winford had not seen or weighed the cocaine. The court estimated that the total amount involved was at least 3.5 kilograms of cocaine based on Winford's testimony about the packages of cocaine and the agent's testimony concerning Soto's involvement with the transfer of money. Soto argues on appeal that there was no reliable evidence concerning the amount of cocaine because Winford did not see the contents of the packages he picked up with Soto and that the district court's finding is, consequently, clearly erroneous. See United States v. McDonald,

3

61 F.3d 248, 255 (4th Cir. 1995) (standard of review). However, in a case where there has been "no drug seizure or the amount seized does not reflect the scale of the offense, the court may approximate the quantity of the controlled substance." USSG§ 2D1.1, comment. (n.12); see also United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994). We are persuaded that the district court's finding was adequate to resolve the issue. Moreover, the court's conservative estimate of the amount of cocaine in the nine packages was not clearly erroneous.

Given the court's finding that Soto's involvement was not limited to the conduct he admitted--delivering to Ungarski the keys to a car he knew contained cocaine--the district court did not clearly err in finding that he had more than a minimal or minor role in the offense. The district court credited Winford's testimony and the hearsay information from other conspirators presented by the agent, which showed that Soto was neither among the least culpable, see USSG § 3B1.2, comment. (n.1), nor less culpable than most other participants. See USSG § 3B1.2, comment. (n.3).

Soto next contends that the government failed to prove that he obstructed justice because there was no evidence that Mrs. Ungarski was afraid of Soto, only of his associates. He also argues that there was no evidence that she was expected to be a witness and, therefore, no evidence that her perception that she was threatened could have interfered with the administration of justice. The court properly found, however, that an attempt to intimidate a witness is enough to trigger the adjustment. See USSG § 3C1.1 & comment. (n.3(a)) (adjustment applies if defendant attempts to impede prosecution by threatening co-defendant or witness). We note that the threat was that Mrs. Ungarski would be harmed by Soto's friends should Soto be arrested; therefore, her fear was naturally directed not to Soto, but to his friends. In addition, the threat was obviously intended to discourage either Ungarski or his wife from giving information which might lead to Soto's arrest, and thus was intended to frustrate the prosecution of the offense. Finally, because Soto received an adjustment for obstruction of justice, the district court did not clearly err in refusing to award him a reduction for acceptance of responsibility. See USSG § 3E1.1, comment. (n.4).

Accordingly, we affirm the sentence. Soto's motion for leave to file a pro se supplemental brief is granted. We dispense with oral argu-

ment because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED